UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOELLE SIGNORELLI,<br><br>    Plaintiff,<br><br>v.<br><br>NORTH COAST BREWING CO. INC.,<br><br>    Defendant. | Case No. 5:18-cv-02914-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 25 |

## I. INTRODUCTION

Plaintiff Joelle Signorelli ("Signorelli") initiated this suit for copyright infringement against Defendant North Coast Brewing Co. Inc. ("North Coast Brewing") and Does 1 through 10 to stop defendants from using her late husband's artwork on North Coast Brewing beer bottle labels and merchandise. North Coast Brewing moves to dismiss the Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, North Coast Brewing's motion to dismiss will be granted.

## II. BACKGROUND[1]

Plaintiff and her husband Eduardo Smissen ("Eduardo") were married from 2004 until Eduardo's death in February of 2015. SAC ¶ 7. In October of 2005, Doug Moody ("Moody") of North Coast Brewing asked Eduardo if he would be interested in designing a bottle label featuring jazz artist Thelonious Monk for a beer now known as Brother Thelonious Belgian Style Abbey Ale. *Id*. ¶ 11. Eduardo emailed Moody a three-part proposal: (1) $350 for the initial sketches of Thelonious Monk, to be done in coordination with designer Theresa Whitehall of Colored Horse

---

[1] The Background is a summary of the allegations set forth in the SAC. Dkt. No. 22.

**CASE NO.: 5:18-cv-02914-EJD**
**ORDER GRANTING MOTION TO DISMISS**
1

("Whitehall"); (2) $1,150 for the final artwork and "licensing of the image for the beer label"; and (3) $1,500 for the original painting, if desired. *Id.* ¶ 12. Moody emailed Whitehall and asked if she was ready to proceed with Eduardo's proposal. *Id.* ¶ 13. Whitehall responded, "Absolutely! That's terrific." *Id.* ¶ 14. Moody did not respond in writing to Eduardo's proposal. *Id.* ¶ 15. Nevertheless, Eduardo completed his work and "Eduardo's beer label was being affixed by North Coast Brewing to bottles of Brother Thelonious Abbey Ale" by the end of 2005. *Id.* ¶ 16.

By 2006 or 2007, Eduardo and Signorelli had learned that North Coast Brewing had been using Eduardo's artwork "more broadly than even anticipated as a beer label—most specifically on various merchandising items—and to promote all of its products by way of Jazz music records, concerts, and festivals." *Id.* ¶ 17. "Eduardo's beer label had become a crucial part of North Coast Brewing's corporate identity." *Id.* This use of Eduardo's work "was not part of the parties' anticipation in late 2005 (neither in scope nor extent)—nor could the success of the label and its subsequent adoption as a form of corporate identity have been predicted." *Id.* By 2006 or 2007, Eduardo and Signorelli also learned from Moody that Eduardo's design for the beer label "had been singularly instrumental in growing North Coast Brewing from a small local brewery into an international presence. This too involved use of Eduardo's design that far exceeded any anticipated use." *Id.* ¶ 18. Signorelli further alleges that "[i]n using Eduardo's design in ways that differed from or exceeded any use anticipated by the parties, North Coast Brewing has benefitted financially and has deprived Eduardo of financial value that is now rightfully hers." *Id.* ¶ 19.

Later, North Coast Brewing and the Thelonious Monk Institute of Jazz and/or the Monk estate reached some type of partnership whereby North Coast Brewing would promote Jazz music. *Id.* ¶ 20. By 2006 or 2007, Eduardo and Signorelli learned that North Coast Brewing had been giving the Thelonious Monk Institute of Jazz $1.00 for every case of Brother Thelonious Abbey Ale that North Coast Brewing had sold. *Id.* ¶ 21. Signorelli asked Moody to "make a financial arrangement with Eduardo that was fairer," but was told it was "too late." *Id.* ¶ 21.

In 2010-2012, Moody hired Eduardo "to design some merchandising related to Thelonious

**CASE NO.: 5:18-cv-02914-EJD**
**ORDER GRANTING MOTION TO DISMISS**

2

Monk "that was separate and discrete from the 2005 work," although some of this 2010-2012 work involved "tinkering with the 2005 work to adjust it to merchandise such as Christmas ornaments and T-shirts." *Id.* ¶ 22. Neither Eduardo nor Signorelli sold the 2010-2012 work to North Coast Brewing. *Id.* ¶ 23. Nevertheless, North Coast Brewing retained and benefitted from the 2010-2012 work. *Id.*

In 2015, Eduardo passed away. *Id.* ¶ 24. At the memorial services, Moody acknowledged to Signorelli that the "financial arrangements" for Eduardo's "work" had been "unfair" and "promised" to "make this right." *Id.* Shortly thereafter Moody told Signorelli that the board of North Coast Brewing had said "no" to any compensation for Signorelli. *Id.* Despite the board's decision, in August of 2016 and again in June 2017, Signorelli "received $2,000 from North Coast Brewing by way of the Elk Community Center." *Id.*

In December of 2017, Signorelli obtained copyright registration for Eduardo's 2005 "design." *Id.* ¶ 26. Signorelli later notified North Coast Brewing "that any consent previously given to North Coast Brewing by Eduardo for use of his design on the beer label was immediately terminated and revoked, and that North Coast Brewing could no longer use the design without entering into a merchandising agreement with her." *Id.* ¶ 27. Signorelli similarly notified North Coast Brewing that any consent previously given for use of Eduardo's beer label design or any design based on the beer label design for anything else including merchandising items was immediately terminated and revoked. *Id.* Despite the notices, North Coast Brewing has continued to use Eduardo's 2005 design on beer labels and merchandising. *Id.*

On May 17, 2018, Signorelli initiated the instant suit asserting claims for: (1) copyright infringement under federal law; (2) copyright infringement under California law; (3) conversion; (4) unjust enrichment/restitution; and (5) breach of express and implied contract, including breach of the implied covenant of good faith and fair dealing. Dkt. No. 1. North Coast Brewing moved to dismiss the original complaint, arguing, among other things, that it had an implied, non-exclusive, unlimited and irrevocable license to Eduardo's painting. The court found North Coast's arguments persuasive and granted North Coast Brewing's motion to dismiss with leave to amend.

**CASE NO.: 5:18-cv-02914-EJD**
**ORDER GRANTING MOTION TO DISMISS**
3

Dkt. No. 21.

North Coast Brewing now moves to dismiss the SAC, contending that the sole claim for copyright infringement fails as a matter of law because North Coast has an irrevocable license; the SAC fails to allege that the license was limited so as to bar the marketing efforts about which Signorelli complains; and even if the license was limited, the Copyright Act's Advertising Immunity bars Signorelli's claim.

## III. STANDARDS

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When deciding whether to grant a motion to dismiss, the court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

## IV. DISCUSSION

Like the original Complaint, the SAC rests on factual allegations that North Coast has a non-exclusive implied license. At issue are (1) the scope of the license and (2) Signorelli's right, if any, to unilaterally revoke the license.

### A. Scope of License

An implied license is granted when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work."

**CASE NO.: 5:18-cv-02914-EJD**
**ORDER GRANTING MOTION TO DISMISS**
4

*I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996) (citing *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990)). The scope of an implied license is determined by the licensor's objective intent at the time of the creation and delivery of the copyrighted work as manifested by the parties' conduct. *Asset Marketing Systems, Inc. v. Gagnon*, 542 F.3d 748, 756 (9th Cir. 2008). The burden is on the licensor "to express an intent to… limit…[the] license if he intended to do so… [and a] belated statement… [i]s not sufficient…." *Id.*

Here, Signorelli alleges that Eduardo intended for North Coast Brewing to copy his 2005 work onto the label to be affixed to North Coast Brewing's Brother Thelonious Belgian Style Abbey Ale "to assist in its identification and marketing." SAC ¶ 36. Signorelli alleges that the scope of the implied license "would have permitted North Coast Brewing to place Eduardo's artwork on a *limited* number of bottles for *limited* geographical (i.e., local) distribution." *Id.* Nowhere, however, does Signorelli allege facts to show that Eduardo expressed his intent to North Coast Brewing—whether by word or by action—to limit the scope of the implied license in any manner. Instead, the allegations from the SAC strongly suggest that Eduardo and North Coast Brewing did not discuss any limitations on the implied license because neither party expected North Coast Brewing, a small local Mendocino brewery, to become an international success. SAC ¶ 37. Signorelli alleges that nobody expected the North Coast Brewing to be so successful due in large part to Eduardo's artwork, and "[a]ccordingly any copyright ownership for *non-local beer label usage* remained, and must have remained, exclusively with Eduardo and Joelle." *Id.* The SAC similarly makes clear that Eduardo and North Coast Brewing did not express any intent to preclude use of Eduardo's 2005 work or merchandise. Signorelli alleges that "[t]he discussion between the parties in 2005 had been about a beer label, nothing more. There was no discussion, and therefore could be no agreement, with North Coast Brewing about using Eduardo's work for anything aside from a beer label." SAC ¶¶ 37-38.

The lack of any discussions regarding the scope of the implied license is fatal to Signorelli's claim. The burden was on Eduardo to express an intent to limit the scope of the implied license at the time the license was granted. *Asset Mktg. Sys., Inc.*, 542 F.3d at 756. That

**CASE NO.: 5:18-cv-02914-EJD**
**ORDER GRANTING MOTION TO DISMISS**
5

the parties did not give any thought to North Coast Brewing's potential future success does not negate the requirement that the licensor expressly limit the license. Having failed to express any intent to limit the implied license, North Coast Brewing received an unlimited implied license to Eduardo's work "to assist in its identification and marketing" of the Brother Thelonious Belgian Style Abbey Ale. *See e.g.*, *Castro v. Calicraft Distributors, LLC*, No. 14-CV-05226-RS, 2015 WL 5042225, at *2 (N.D. Cal. Aug. 25, 2015) (granting motion to dismiss because there were "no allegations that" any purported "limitation [of the license] was communicated to defendants"); *see also Beijing Zhongyi Zhongbiao Elec. Info. Tech. Co. v. Microsoft Corp.*, 655 F. App'x 564, 566 (9th Cir. 2016) (affirming granting of motion to dismiss, without leave to amend, where face of complaint showed no "intent to limit the license's scope").

### B. Advertising Immunity

Moreover, even if the license was limited, which it is not, North Coast Brewing's use of Eduardo's work in marketing efforts is permitted under Section 113(c) of the Copyright Act, which provides as follows:

> In the case of a work lawfully reproduced in useful articles that have been offered for sale or other distribution to the public, copyright does not include any right to prevent the making, distribution, or display of pictures or photographs of such articles in connection with advertisements or commentaries related to the distribution or display of such articles, or in connection with news reports.

17 U.S.C. § 113(c). "A 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a 'useful article.'" 17 U.S.C. § 101. Applying this definition, North Coast Brewing's beer bottles are "useful articles." *See e.g. Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1080 (9th Cir. 2000) (alcohol beverage bottle recognized to be a "useful article"). Likewise, the labels, themselves, are useful articles because they are "normally a part of" North Coast Brewing's beer bottles. 17 U.S.C. § 101; *see also Major v. Sony Music Entertainment, Inc.*, No. 92-2826 PKL, 1992 WL 210115, at * 3 (S.D.N.Y. August 17, 1992) (finding video package cover is a "useful article"). In *Major*, the defendant was authorized to use

CASE NO.: 5:18-cv-02914-EJD
**ORDER GRANTING MOTION TO DISMISS**
6

the plaintiff's copyrighted photograph on a video package cover, a useful article. The plaintiff contended that defendant had exceeded the scope of its licenses by publishing the photograph in conjunction with "an advertisement and [by using] and continu[ing] to utilize the [photograph] to advertise." *Major*, 1992 WL 210115, at *1. The court rejected plaintiff's argument, reasoning that because the photograph was lawfully reproduced as part of the video package cover, plaintiff's copyright did not include the right "prevent the . . . display of . . . photographs of such articles in connection with advertisements. . . related to the distribution of such articles." *Id*. at *3.

As in *Major*, North Coast Brewing's use of Eduardo's 2005 artwork in advertising is authorized pursuant to section 113(c). Signorelli acknowledges that section 113(c) permits some types of advertising, and implicitly concedes that North Coast Brewing may use photographs of its beer bottle to advertise in magazines or otherwise. Pl.'s Opp. at 5. Signorelli contends, however, that section 113(c) does not permit North Coast Brewing to use Eduardo's artwork on coasters, key rings, Christmas ornaments, beer taps and banners to sell other products and services. Pl's Opp. at 5. The argument is unpersuasive because as stated previously, the beer labels themselves are "useful articles," and as such, may be displayed in connection with advertisements that are related to the distribution or display of the beer bottle labels or the beer bottles pursuant to section 113(c). Moreover, branded merchandise is a form of advertising and placing the label design on other merchandise or in other promotional materials is a way to advertise North Coast Brewing's beer.

Signorelli's reliance on *Jones v. Corbis Corp.*, 815 F. Supp.2d 1108 (C.D. Cal. 2001), aff'd, 489 F.App.'x 155 (9th Cir. 2012), is misplaced. In *Jones*, plaintiff claimed a violation of her rights of publicity. In discussing the scope of plaintiff's consent to the use of her likeness, the court stated that its "holding leaves Plaintiff's rights of publicity undisturbed in cases where a defendant uses Plaintiff's image to advertise an unrelated product such as a food item or if a defendant transforms Plaintiff's image into a separate product." *Id*. at 1116. The *Jones* case did not involve copyright infringement, much less advertising immunity under section 113(c), and therefore lends no support to Signorelli's argument.

**CASE NO.: 5:18-cv-02914-EJD**
**ORDER GRANTING MOTION TO DISMISS**
7

### C. Revocable or Irrevocable License

The SAC alleges that North Coast Brewing paid Eduardo for his painting. This payment establishes that the implied license is irrevocable. *Asset Marketing Sys., Inc.*, 542 F.3d at 757 ("because [licensee] paid consideration, this license is irrevocable").

### D. Reformation

Lastly, Signorelli argues that the injunctive relief she intends to seek includes reformation or rescission of the implied license, and that these remedies are not subject to a motion to dismiss. The argument is baseless. The SAC makes no mention of reformation of rescission. Furthermore, because the SAC fails to state a viable claim, Signorelli is not entitled to any remedy.

## V. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED. The dismissal is without leave to amend because Signorelli has already had three opportunities to plead a viable claim. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 21, 2019

EDWARD J. DAVILA
United States District Judge

**CASE NO.: 5:18-cv-02914-EJD**
**ORDER GRANTING MOTION TO DISMISS**

8